# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Michael Levan, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-1022 |
| ) | |
| Steven George, ) | |
| Randy Weber, ) | |
| Sonni Williams, ) | |
| Sandra Westerfield, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendants' motions to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6)(d/e's 22, 24). For the reasons below, the Court recommends dismissal of Plaintiff's access to courts claim, with leave to replead. The Court also recommends dismissal of Plaintiff's malicious prosecution claim based on the Fifth Amendment, to the extent he makes one. The Court recommends the motions otherwise be denied.

## STANDARD OF REVIEW

The Court takes the allegations in the complaint as true, viewing all facts, as well as any reasonable inferences, in the light most favorable to the plaintiff.  Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir. 2004).  "'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514  (2002), *quoting* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  A plaintiff is not required to plead specific facts to state a claim-- conclusory allegations are sufficient.  Fed. R. Civ. P. 8; Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).  The focus at this stage is "whether relief [is] possible based on any legal theory . . . under any set of facts that could be established consistent with the allegations . . . ."  McDonald v. Household International, Inc., 425 F.3d 424, 428 (7th Cir. 2005).

### Allegations

The allegations are taken from the Amended Complaint (d/e 21) and are set forth as true for purposes of this recommendation.

On February 5, 2004, Plaintiff appeared in Judge Kouri's courtroom in the Peoria County Courthouse, for a hearing on Plaintiff's motion to

reconsider a default judgment that had been entered against him in a traffic court case. Defendant Williams, an attorney for the City of Peoria, was in the courtroom and had Plaintiff's court file on the counsel table, behind the bar.

Plaintiff needed to look at the court file to prepare for the hearing, but Defendant Williams denied Plaintiff's attempts to access the file, instead informing Plaintiff that she intended to present a petition to show cause why Plaintiff should not be arrested. Williams also directed Defendant Westerfield, a Peoria County Jail Officer, to arrest Plaintiff if he should traverse in front of the bar. Judge Kouri was not present during this exchange.

Despite Williams' admonition, Plaintiff proceeded beyond the bar to look at the court file. Williams again refused to allow Plaintiff access to the court file and directed Defendant Westerfield to arrest Plaintiff.

Defendant Westerfield arrested Plaintiff, despite lacking probable cause to believe Plaintiff had committed any crime, and despite Williams' lack of authority to order an arrest. Defendant George, another Peoria County Jail Officer, took "off [P]laintiff's glasses and releas[ed] pepper spray into plaintiff's face and eyes while he was in the custody of Officer

Westerfield." (Amended Complaint ¶ 20). Westerfield and George then placed Plaintiff in a jail cell adjoining the courtroom.

While plaintiff was in the jail cell, Defendant Weber, yet another Peoria County Jail Officer, came in and "kicked [P]laintiff in the face . . . and pulled his hair upwards and again pepper sprayed the face of [P]laintiff. Officer Weber also slammed [P]laintiff's face into the corner of the elevator when transporting him . . . to the Peoria County Jail." (Amended Complaint ¶ 22).

Criminal proceedings were instituted against Plaintiff based on Defendants' false account of Plaintiff's behavior in the courtroom. Plaintiff was charged with disorderly conduct, resisting a peace officer, and aggravated battery. He was ultimately acquitted of the charges in a criminal trial in July 2006.

**Analysis**

The Amended Complaint titles three claims: false arrest, excessive force, and denial of access to the courts. (Amended Complaint, pp. 7-8, sections B, C, and D). However, the false arrest claim includes an allegation that Plaintiff was prosecuted without probable cause, based on a "right to be free from prosecution without probable cause guaranteed . . .

by the Grand Jury clause of the Fifth Amendment." (Amended Complaint ¶ 28). It is therefore not clear whether Plaintiff is attempting to assert a federal malicious prosecution claim based on the Fifth Amendment in addition to his Fourth Amendment false arrest claim.

Defendants George, Weber and Westerfield (the "Jail Officers") move to dismiss the false arrest and access claims, along with the malicious prosecution claim. Defendant Williams moves to dismiss only the access claim. None of the defendants move to dismiss the excessive force claim.

## I. False Arrest

The Jail Officers argue that the false arrest claim is barred by collateral estoppel, due to Plaintiff's waiver of his probable cause hearing in the criminal proceedings against him. Plaintiff counters that his waiver has no effect on his ability to pursue a false arrest claim, particularly since he was ultimately acquitted of the charges.

Collateral estoppel, or issue preclusion, may apply in § 1983 cases to bar relitigation of issues determined in state criminal proceedings, depending on the applicable state's law. Allen v. McCurry, 449 U.S. 90, 104 (1980). In Illinois, collateral estoppel is an equitable doctrine. Talarico v. Dunlap, 177 Ill.2d 185, 191 (1997)(guilty plea in criminal proceeding did

not bar subsequent malpractice action against drug makers).  Its "minimum threshold requirements" are: 1) identical issues; 2) final judgment on the merits in the prior case; and 3 privity.  Id.  "For collateral estoppel to apply, a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit."  Id.; *see also* Gilldorn Savings Ass'n v. Commerce Savings Ass'n, 804 F.2d 390, 392-93 (7th Cir. 1986)(issues must be "actually litigated and decided on the merits"); County of Cook v. Midcon Corp., 773 F.2d 892, 898 (7th Cir. 1985).  Yet even if these requirements are satisfied, application of collateral estoppel is not rote.  Ultimately, it is an equitable doctrine, not to be applied if "unfairness results."  Id.

     Defendants do not explain how a waiver of probable cause amounts to actually litigating the issue, nor how an order finding probable cause based on that waiver amounts to a decision on the merits.  They attach Judge Kouri's order in the criminal proceedings, but the order states only that "pursuant to [Defendant's] waiver of PC statement the Court finds PC to detain exists."  (2/6/04 Order attached as part of Exhibit 1 to d/e 23).  All the cases cited by Defendants involve findings of probable cause after full, adversarial hearings on the issue.  *See, e.g.,* Lossman v. Pekarske, 707

F.2d 288 (7th Cir. 1988)(adversarial hearing regarding parent fitness); Donald v. Polk County, 836 F.2d 376 (7th Cir. 1988)(jury finding of child abuse); Jensen v. Foley, 295 F.3d 745 (7th Cir. 2002)(probable cause found after adversarial hearing); Guenther v. Holmgreen, 738 F.2d 879 (7th Cir. 1984)(probable cause litigated in state court hearing).

Further, even if probable cause had been litigated and decided on the merits in the state court, collateral estoppel would not necessary bar Plaintiff's false arrest claim here. The Seventh Circuit has held that preliminary probable cause hearings address the *sufficiency* of the evidence, not the *integrity* of evidence. See Schertz v. Waupaca County, 875 F.2d 578, 581 (7th Cir. 1989). Schertz held that a state court finding of probable cause on murder charges (on which the defendant was acquitted) did not necessarily bar a later § 1983 claim for false arrest:

> Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution. . . (citations omitted). If, however, the finding of probable cause is based on the defendant's intentional misrepresentation or concealment of material facts, the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of an arrest.

875 F.2d at 582 (citations omitted). Here, Plaintiff alleges that Defendants fabricated evidence and gave false testimony, knowing that no probable

cause existed to criminally charge Plaintiff. These allegations arguably go to the integrity of the evidence against Plaintiff, not to its sufficiency, and therefore the false arrest claim is not barred by collateral estoppel. Id.

## II. Malicious Prosecution

Plaintiff alleges that:

Defendants "fabricated evidence of plaintiff's commission of the crimes of disorderly condcut, resisting a peace officer, and aggravated battery without probable cause or any reasonable belief in the truth of their testimony or authority to arrest plaintiff in deprivation of Plaintiff's right to be free from unreasonable searches and seizures guaranteed him under the Fourth Amendment and his right to be free from prosecution without probable cause guaranteed him by the Grand Jury clause of the Fifth Amendment." (Amended Complaint ¶ 28).

Plaintiff does not address the Fifth Amendment in his response, instead focusing on the Fourth Amendment's protection from false arrest. The Court does not see how the grand jury clause of the Fifth Amendment could support a malicious prosecution claim. See Holman v. Gilmore, 126 F.3d 876, 884 (7th Cir. 1997)("the grand jury clause of the fifth amendment does not apply to the states"), citing Hurtado v. California, 110 U.S. 516 (1884). Accordingly, to the extent Plaintiff pursues a malicious prosecution claim based on the Fifth Amendment, the Court recommends the claim be dismissed.

The Jail Officers are also correct that Seventh Circuit precedent holds that no constitutional cause of action exists for malicious prosecution separate from the Fourth Amendment claim, because Illinois already allows an avenue for redress.  See Smith v. Lamz, 321 F.3d 680, 684 (7th Cir. 2003)("We begin by noting that Smith may not maintain an action under § 1983 for malicious prosecution.");  McCann v. Mangialardi, 337 F.3d 782 (7th Cir. 2003)(malicious prosecution claim must be brought under Illinois law; plaintiff "cannot do an end run around . . .[Seventh Circuit] precedent by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment); Newsome v. McCabe, 256 F.3d 747, 750-51 (7th Cir.2001) (interpreting the effective holding of Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), in accordance with its narrowest ground of decision, to be that state-law remedy for malicious prosecution *"knocks out* any constitutional tort of malicious prosecution").[1]  Plaintiff seemed to concede

---

[1] The Supreme Court recently remarked in Wallace v. Kato, 127 S.Ct. 1091 (2007):  "We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, *see Albright v. Oliver*, 510 U.S. 266, 270-271, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion), and we do not do so here. *See generally* 1 M. Schwartz, Section 1983 Litigation § 3.18[C], pp. 3-605 to 3-629 (4th ed.2004) (noting a range of approaches in the lower courts)."

this when he asked for leave to file an amended complaint, removing the malicious prosecution claim against Defendant Williams.  See original Complaint, count III (d/e 1); d/e 16 (Plaintiff moved to dismiss Williams from malicious prosecution count and add Williams to false arrest count).  However, the Court notes that it is not entirely clear that Plaintiff *is* trying to pursue a "malicious prosecution claim" in addition to his Fourth Amendment claim for false arrest.  Plaintiff asserts in his response that Defendants' fabrication of evidence violated his *Fourth Amendment* rights, which does state a claim.  (d/e 28, p.7).  See Acevedo v. Canterbury, 457 F.3d 721, 723 (7th Cir. 2006)("police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment . . . ."); McCullah v. Gadert, 344 F.3d 655, 660-61 (7th Cir. 2003)(allegedly fabricated incident report may be actionable under Fourth Amendment).

### III.  Access to Courts

Plaintiff alleges that Defendants refused him access to the court file and engineered his arrest on false pretenses in order to prevent him from appearing in his traffic court case to present his motion and to expose

Williams' alleged misconduct in refusing him access to the file.[2] (Amended Complaint ¶ 30; d/e 28, p. 10).

"The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to Petition and the Fourteenth Amendment right to substantive due process." Snyder v. Nolen, 380 F.3d 279, 291 (7th Cir. 2004).

Defendants submit that Christopher v. Harbury, 536 U.S. 403 (2002) requires dismissal of Plaintiff's access claim because Plaintiff has not identified an underlying cause of action or a remedy lost as a result of Defendants' conduct. (d/e 25, pp. 2-3; d/e 23, p. 4). The Jail Officers additionally argue that Plaintiff states no access claim because the alleged misconduct only delayed a hearing on Plaintiff's motion by two months.

---

[2]Specifically, the Amended Complaint alleges Defendants Westerfield, George and Williams "intentionally denied and deprived plaintiff of his right of access to the courts to defend himself in the traffic case and to present his grievances over the conduct of Williams to Judge Kouri in deprivation of plaintiff's right of access to the courts that is a part of the privileges and immunities of citizenship guaranteed under Article V, Section 2, a part of the right to petition guaranteed by the First Amendment, and a part of the substantive and procedural guarantees of due process of law by the Fourteenth Amendment. (Amended Complaint ¶ 30).

In Christopher, a widow alleged that federal officials intentionally concealed and misrepresented their knowledge about her husband's capture, torture and execution by CIA-funded Guatemalan army officers. Among other claims for direct injury, the widow argued that her own constitutional right to access the courts was violated by the concealment, because she would have filed a lawsuit to save her husband's life if the federal officials had truthfully answered her inquiries.

The Supreme Court in Christopher held that the widow did not state an access-to-courts claim for two reasons. First, she had not identified the cause of action she had lost as a result of the defendants' actions. Second, she had not identified a remedy that could not be awarded in an already existing claim. 536 U.S. at 418-419. While Christopher involved the concealment of evidence, it's general discussion of what constitutes an access to the courts claim is instructive.

Unlike Christopher, Plaintiff here *does* arguably identify a litigation opportunity he lost–the opportunity, on February 5, 2004, to defend himself against contempt proceedings and to present his motion to vacate the default judgment against him. That is, Plaintiff's arrest on allegedly contrived charges deprived him of the "opportunity to seek some particular

order of relief . . ." in the traffic court case on February 5, 2004. 536 U.S. at 414.

Plaintiff argues that this alone is sufficient to state an access claim--that the violation of his right of access to the courts "was complete with plaintiff's arrest." He contends he would be entitled to nominal damages even if his removal from the courtroom had no effect on his ultimate defense in the traffic court proceedings. (d/e 25, p. 11).

Yet controlling case law, including Christopher, requires more. Even under notice pleading standards, Plaintiff must still identify how his removal from the courtroom caused him injury in the traffic court proceedings. Christopher, 536 U.S. at 414-415 and fn. 13 (in essence, to state an access claim, plaintiff must identify injury from being "shut out of court"; for example, that the underlying action was lost or inadequately settled); Lewis v. Casey, 518 U.S. 343, 347-352 (1996)(discussing actual injury requirement for inmate's access to court claim); Pratt v. Tarr, 464 F.3d 730, 732 (7th Cir. 2006)("basic allegations of the prejudice suffered" required on prisoner's access claim); *see also* Farrar v. Yamin, 261 F.Supp.2d 987, 991 (N.D. Ill. 2003)("Inconvenience or delay are not sufficient . . . plaintiff "must allege that she was prevented from pursuing her claims in court or

that the value of her claims was significantly reduced as a result of Defendants' conduct.")(affirmed by Seventh Circuit in unpublished order). This is not described as a heightened pleading standard, but rather as part of a plaintiff's duty under Fed. R. Civ. P. 8(a) to give notice of his claim and show entitlement to relief.  Christopher, 536 U.S. at 417-418; Pratt, 464 F.3d at 732-33 (access claim does not have to be pleaded with particularity, but allegations must give notice of prejudice (lost case or legal setback)).

Therefore, Plaintiff's allegations must give fair notice of how his removal from Judge Kouri's courtroom on February 5, 2004, actually prejudiced his defense in the traffic court proceedings.  The Court does not believe Plaintiff has done so, either in the amended complaint or in his response.   First, for the reasons above, the plaintiff's removal from the courtroom, by itself, does not give rise to an inference of actual injury.[3] Second, the record of the traffic court proceedings attached to the Jail

---

[3] Even if Plaintiff had suffered a concrete injury in the traffic court proceedings, such as being held in contempt or having his motion to vacate denied, it seems that the injury could have been remedied by bringing the incident to Judge Kouri's attention at the next hearing and moving to vacate those adverse actions.  See Snyder, 380 F.3d at 279 (Judge Easterbrook stating that "opportunities to correct mistakes before a suit reaches its conclusion means that there is no constitutional problem in the first place.").

Officers' motion does not allow an inference of actual injury.[4]  It appears that all Judge Kouri did on February 5, 2004, is continue the matter to April 8, 2004.[5]  Lastly, plaintiff is already pursuing a false arrest claim based on the same facts.  Thus, no remedy is lost.[6]  Accordingly, the court will recommend dismissal of the access to courts claim.

It appears likely that any amendment of the access claim would be futile.  See Fed. R. Civ. P. 15(a); Bethany Pharmacal Co. v. QVC, Inc., 241

---

[4] Of which judicial notice is appropriate.  4901 Corp. v. Town of Cicero, 220 F.3d 522 fn. 4 (7th Cir. 2000).

[5] According to the record of those proceedings, Judge Kouri entered a rule to show cause against Plaintiff on December 4, 2003, directing Plaintiff to appear in court on February 5, 2004, and show cause why he should not be punished for contempt of court for failure to pay the parking ticket fine and costs of $100.  On February 5, 2004, the day Plaintiff was arrested, Judge Kouri entered an order continuing the matter to April 4, 2004, finding that Defendant had appeared but was "taken under custody for disorderly conduct in the courtroom . . . yelling profanity . .. violently resisting deputies and had to be pepper sprayed." (partly illegible). On April 8, 2004, Judge Kouri entered an order finding that Plaintiff had not appeared and issuing a bench warrant for Plaintiff's arrest with bail set at $130.  Plaintiff was apparently subsequently arrested and posted bond.  It appears the traffic case was then stayed or taken under advisement because of Plaintiff's pending criminal case on disorderly conduct.  Then, on June 1, 2005, Judge Kouri denied Plaintiff's motion to vacate the parking ticket fine.  On October 7, 2005, Judge Kouri denied Plaintiff's motion to reconsider that ruling, applied the bond posted to the fine balance, and closed the case.

[6] This is similar to Christopher, where the plaintiff's access claim was based on the same allegations as her tort counts that had survived dismissal.  The access claim in Christopher added nothing to the case but another theory for recovery, just as here.

F3d 854, 860 (7th Cir. 2001)(leave to amend not required if amendment futile).  However, the Court cannot determine futility beyond doubt because Plaintiff has not addressed the actual injury requirement in his response. Accordingly, the Court will recommend Plaintiff be given leave to file an amended complaint to state an access to the courts claim if he believes he is able.

WHEREFORE, the Court RECOMMENDS that Defendants' motions to dismiss be GRANTED IN PART and DENIED IN PART.  (d/e's 22, 24). The Court recommends dismissal of Plaintiff's access to the courts claim (Amended Complaint, p. 8, section D), but with leave to replead.  The Court further recommends dismissal of the malicious prosecution claim based on the Fifth Amendment, to the extent the Amended Complaint attempts to state such a claim.  The Court lastly recommends the motions to dismiss be otherwise denied.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

ENTER:   May 22, 2007

                                                             s/ Byron G. Cudmore
                                      _____
                                              BYRON G. CUDMORE
                                UNITED STATES MAGISTRATE JUDGE